a consideration of the provisions of section 558, as to vacating an order of arrest when the complaint filed fails to show a sufficient cause of action under section 549. He construed that section as contemplating that the complaint might not be issued or filed until after the order of arrest had been granted. But this provision of the section was in the Code as originally enacted, while subdivision 4 was not added to section 549 till 1887. The provisions of section 558, therefore, cannot influence the construction to be given to subdivision 4.

The order appealed from should be affirmed, with $10 costs and disbursements.

---

SIMMONS v. POUGHKEEPSIE & E. RY. CO.

(Supreme Court, Appellate Division, Second Department. February 18, 1896.)

1. STOCK-KILLING CASE—NEGLIGENCE—EVIDENCE.

 Recovery for the killing of a horse on a railroad cannot be had of the company, on the ground that it left open the gate leading from plaintiff's premises, there being no proof when it was opened or who opened it, on the mere testimony that, at some time in the past, employés of defendant had used the gate in going to plaintiff's barn.

2. SAME—CARE DUE TRESPASSER.

 A railroad company does not owe usual and ordinary care to a horse trespassing on the track, but is liable only for reckless, wanton, or malicious conduct of its agents in running it down.

Appeal from Dutchess county court.

Action by Charles A. Simmons against the Poughkeepsie & Eastern Railway Company. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

Frank B. Lown, for appellant.
A. M. & G. Card, for respondent.

HATCH, J. This action was brought to recover damages for negligence in producing the death of a horse, which had strayed upon defendant's tracks, and was there run down by a train operated by defendant. The recovery is sought to be sustained upon two theories: First, that defendant was guilty of negligence in opening a gate leading from plaintiff's premises to defendant's tracks; second, that defendant was guilty of negligence in not acting with ordinary care and prudence after it discovered that the horse was upon its tracks. The case was submitted to the jury by the learned court upon both theories, and resulted in a verdict for the plaintiff.

Substantial obstacles stand in the way of supporting the verdict thus rendered. The case established no more than these facts: Plaintiff's farm lay on each side of the railroad track, which ran north and south through it. A crossing was maintained over the tracks, and provision made for gates in the fence on either side. On the east

side was a barn, where the horse was fed and kept during the winter. This side was separated from the tracks by a fence, with a gate therein, erected and maintained by defendant. On the west side there was an opening for a gate, but none had been put up, respecting which there was dispute as to whether defendant had discharged its duty in this regard. Plaintiff testified: That the horse was fed on the east side, at the barn. That at the time of the accident the gate on this side was open. Who opened it, or when it was opened, there is no proof, and plaintiff stated that he did not know how the gate came to be open. He fed the horses, had no men working for him, and did not notice about the gate this morning. The fence had been built something over a year, and the gate had been used by defendant's men, who went through it, sometimes, to the barn, for shelter from storms, and to eat their dinner. But plaintiff was not able to state that he had seen any of defendant's employés go through the gate within a month before the accident, or that he saw them then, or that the gate had been closed within that time. And he would not testify that it was not open more days prior to the accident than it was closed; his statement in this regard being: "I don't know anything about it. I have to feed my horses on the other side of the barn." The horse escaped from the east side to the west side of the track, and started to recross. When the train came, it was cut off, and ran up the track a distance of about 400 feet, where it caught in a culvert, and was struck by the train. The court submitted to the jury the question whether defendant was guilty of negligence which led to the gate being open on the east side, and refused to charge that there was no proof that the east gate was opened by the defendant. An exception to this refusal presents this question.

As we have seen, there was no proof that defendant opened the gate, and, consequently, no basis for charging it with negligence in this regard. So far as the case shows, defendant had discharged its obligation by building a suitable fence, and there was no proof that the fence and gate erected were not in all respects sufficient. The case is therefore brought within the decision in Diamond Brick Co. v. New York Cent. & H. R. R. Co., 58 Hun, 396, 12 N. Y. Supp. 22. The theory of the submission was error, and defendant was entitled to the charge requested. The proximate cause of the accident was leaving the gate open on the east side, and for this it was not shown that defendant was responsible. This view renders unnecessary of consideration the obligation of defendant respecting the opening on the west side.

If we could see our way clear to upholding the recovery upon the first theory, there is a fatal obstacle in the second. The measure of defendant's obligation in this regard was defined by the court to be usual and ordinary care. Such is not the rule. On the contrary, assuming that defendant was not responsible for the open gate through which the horse strayed, it could only be made liable by the reckless, wanton, or malicious conduct of its agents in running the horse down. Boyle v. Railroad Co., 39 Hun, 171; Id. (N. Y. App.) 21 N. E. 724. The facts of the present case, in this regard, are in

all respects weaker than were presented in the case cited, where a recovery based on this ground was refused. This point was presented by the motion for a nonsuit,—not exactly and with precision, yet sufficient to raise it.

It follows that the judgment and order appealed from should be reversed, and a new trial ordered, with costs to abide the event. All concur.