ST.   LOUIS   &   SAN   FRANCISCO   RAILROAD   COMPANY   vs
ZACHARY.

Opinion   Delivered   Oct.   26,   1899.

*1.   Railroad Companies—Killing Stock—Negligence.*

Appellee's horses were killed by a freight train of defendant
company, near a wagon road crossing on a dark night; the
tracks of the horses were observed on the side of the railroad
track ten or fifteen feet from the track for about forty yards
above the crossing, which tracks indicated that the horses were
running or loping.   The horses went on the track at the cross-
ing and were struck fifty feet below the crossing.   No alarm
was given by ringing the bell or blowing the whistle.   No per-
son saw the accident except the engineer and fireman on the
locomotive.   The fireman testifies that he was on the lookout
for stock.   The train was running on a down grade at the rate
of twenty to twenty-five miles an hour.   The engineer stated
that he could not have stopped the train in less distance than

a quarter of a mile. The fireman stated that the horses were struck in a second or two after he discovered them on the track. *Held,* No negligence on the part of the defendant company was shown, and the court should have instructed a verdict for the defendant.

2. *Railroad Companies—Not required to ring bell or blow whistle.*

There is no law in force in the Indian Territory requiring railroad companies to ring the bell or sound the whistle when the train approaches a wagon road crossing, and failure to do so is not negligence per se.

Appeal from the United States Court for the Central District.

WILLIAM H. H. CLAYTON, Judge.

Action by B. W. Zachary against the St. Louis & San Francisco Railroad Company to recover for the killing of plaintiff's stock. Judgment for plaintiff. Defendant appeals. Reversed.

On the 14th day of September, 1898, appellee, Zachary, filed a complaint in writing in the United States Court at Cameron, Ind. T., against appellant, the St. Louis & San Francisco Railroad Company, praying damages in the sum of $150 for the negligent and careless killing of two head of horses by appellant near Talihina, Ind. T., on or about the 16th day of August, 1898. Defendant on the 21st day of September, 1898, filed specific denial under oath, and upon these pleadings this cause was tried on the 15th day of October, 1898, and on October 17, 1898, the jury returned a verdict in favor of the appellee in the sum of $100. On October 18, 1898, appellant filed a motion for a new trial, which was, by the court, overruled, to which ruling and action of the court appellant at the time duly excepted, and has taken its appeal in said cause to this court. The testi-

mony in the cause shows that the horses in question were struck by an engine of appellant on the night of the 16th day of August, 1898, about 9 o'clock; that said night was dark; that the track was down grade at the point where the horses were struck, which was about two miles north of Talihina. The testimony further shows that the animals were struck by a south-bound train, and that it requires two engines to take a train north, which indicates the character of the grade, although at the specific point where the animals were struck the incline was not as precipitous as at a short distance north of this point. Appellant contends that the undisputed testimony shows that it was impossible to have stopped the train, or to have prevented the killing of the animals, even if the animals had first been seen where first located. At the conclusion of the testimony, defendant requested the court to instruct the jury to return a verdict for the defendant, which was, by the court, denied, to which the defendant, appellant herein, duly excepted. On account of this error assigned, and for the further reason that the court did not grant defendant a new trial, the defendant has prayed an appeal, and brought the case here for review.

*L. F. Parker* and *P. L. Soper*, for appellant.

*Hale & Rosser*, for appellee.

SPRINGER, C. J. There are but two specifications of error in this case: First, that the court erred in refusing the motion of appellant to instruct the jury to return a verdict in its favor; second, that the court erred in overruling motion of appellant for a new trial. The evidence as to the material facts in issue in this case is not conflicting. The appellee, in his brief, cites the testimony in the record which most strongly supports his contention. The plaintiff testified that at the place where the horses were killed the track

was a little up grade, "but mighty little, if any"; and that about 200 yards above the road crossing there was a slight curve in the track.    A. Woodell, one of plaintiff's witnesses, testified that there was not much grade at the place where the horses were killed.    "Just above there, about a quarter," he states, "there is a right smart grade," and just below there is also "a right smart grade." William Woods, also a witness for the plaintiff, states that the track was almost level at the place where the horses were killed, and above there there was an up grade; that it was about 300 yards back to the place where the grade stopped; that most of the time it takes two engines to take a train up the other way. The appellee states also, "The undisputed testimony shows that the train was moving at the rate of something between twenty and twenty-five miles an hour." The plaintiff testified that the track was straight for 200 yards north of the place where the animals were killed.    Woodell testified that the track was straight for 250 yards.    J. B. Marine, the engineer, testified that there were 200 or 300 yards of comparatively straight track at the point where the animals were struck.    No alarms of any kind were sounded.    This witness testified that, to the best of his knowledge, he whistled for the crossing, but on cross-examination he admitted that he only supposed that he did, because he usually did so. The fireman was silent on this subject.    Appellee, in his brief, adds further: "To recapitulate, we think the railroad company's employes were negligent in not discovering the horses on the track in the first place; and, secondly, having discovered them, they were negligent in not making some effort to avoid injuring them." The foregoing is a fair statement of the evidence for the appellee, and of his legal contentions.    It is assumed that the appellee has stated the evidence as strongly in his behalf as the record will permit. The appellant, in its brief, calls attention to certain testimony in the case as follows: That of the plaintiff, who

testified that he was not present when the accident occurred, yet he had observed the tracks of the horses the next day after they were killed, and that those tracks extended 20 or 30 yards below the wagon-road crossing; that he had observed the tracks about 40 yards above the railroad crossing, and about 10 or 15 feet from the track; that the tracks indicated that the horses were running or loping.    A. Woodell, who was called as a witness for the plaintiff, testified that he "found the tracks of three horses where they had went running down by the side of the railroad, and where they had went onto the railroad"; that he first saw those tracks about 40 yards above the mill, north, and that they were about 15 feet from the railroad track where the tracks of the horses first appeared, and that those horses' tracks indicated that the horses were running; the tracks started from about 40 yards above the crossing, and ran right down the side of the track to the crossing, and then turned right down the railroad, one horse running right on the end of the ties, and the other right up in the center of the track; that they must have run 25 steps, and that a step was $2\frac{1}{2}$ or 3 feet; that it was 50 feet or more from the crossing to where the horses were found dead the next morning; that from where the tracks of the horses first began to appear near the railroad to where they got on the crossing it was about 90 or 100 feet; that Zachary's horses went on the track at the crossing, and that they were found on the side of the track the next morning, 40 or 50 feet south of the crossing.    William Woods, a witness for the plaintiff, testified that there was a curve below the crossing and one above; that the horses were killed below the crossing; that there is a short piece of track, probably 100 or 200 yards, where the track is straight, but whether perfectly straight or not, witness could not say.    Woodell, a witness on the part of the plaintiff, testified that he did not hear any signals or alarms there (meaning at the place where the accident occurred),

but that he heard a whistle about a mile above there; that he did not know what the whistle was for; it might have been what the railroad company calls a "crossing whistle"; that he heard three or four blasts; that that was a mile or two above the place where the accident occurred.   On behalf of the defendant, J. B. Marine, engineer in charge of the train, testified that he had a full train of merchandise (coal and some merchandise), and that from Compton to Talihina, bound south, it is a down grade, and requires two engines to bring such a train north; that the train at the time was running at the rate of 20 to 25 miles an hour; that it would have been impossible to have stopped the train within the distance from where the tracks of the horses were first discovered to where they were struck, and that it would have required at least a quarter of a mile to have stopped the train; that the animals came upon the track on the left side of the engine, and that he did not see them in time to have taken any precaution to prevent injury to the stock; that he could see stock for about 200 or 300 feet; that there were no stock within the light of the headlight as the train went down the grade; that he saw no stock whatever, but that, if he had seen stock within 200 feet, going down the grade, he could not have stopped the train.   It would take at least a quarter of a mile to have stopped that train on that night, going down that grade, using every means within his power. Some of the cars were coal cars, very heavy, and it was the heaviest train that the company handled.   On cross-examination this witness testified that he could have slowed the train up some in a distance of 140 feet, possibly to 12 or 15 miles an hour.   He said that he did not see any stock on the track at all until he saw a horse roll off on the right-hand side of the track.   W. L. Roberts, who was a locomotive fireman on the train, was called as a witness on behalf of the defendant below.   He testified that he remembered some horses being killed or struck by an engine; that it was about

9 or 10 o'clock in the evening; that he noticed them just as they were struck, or just before they were struck; that he saw two horses; that he was on the left side of the engine; that the horses were struck in a second or two after they came upon the track; that they were right at the end of the ties when he saw them; that it was a few yards below the crossing,—right close to the crossing; that it was down grade; that the train was running about 20 miles an hour; that the train was about 10 or 15 yards from the horses when he saw them, and that he had not seen them before. He says, "It was as dark as the dickens, and I could not see only right in front of the headlight;" that he was sitting on the seat box, looking, when he saw the horses. The appellant introduced three photographs of the scene of the place where the accident occurred. They were taken at the instance of W. F. Baker, the claim agent of the defendant company. These photograghs are preserved in the record. They indicate the curve in the track near the place where the accident occurred.

Giving the evidence in this case the greatest probative force possible in behalf of appellee, and taking into consideration those facts which are not disputed, it appears that the appellee's horses were killed by a freight train of the defendant company near Talihina, Choctaw Nation, Ind. T.; that the accident occurred near a wagon-road crossing; that it was in the nighttime, and very dark; that the tracks of the horses were observed on the side of the railroad track 10 or 15 feet from the track, and about 40 yards above the railroad crossing, which tracks indicated that the horses were running or loping; that the horses went on the track at the railroad crossing, and that they were struck 50 feet below the crossing; that no signals were given at the time the accident occurred; that there was a slight curve above the crossing, but that the track was probably straight 100 or 200 yards; that no person saw the accident at the time it occur-

red except the engineer and fireman on the locomotive. The fireman testified that he was on the lookout for stock. The train was running at the rate of 20 to 25 miles an hour. The engineer stated that running at that rate he could not have stopped that train in a less distance than a quarter of a mile; that he could see in front of the engine, by the headlight, objects on the track about a telegraph pole's length if the headlight was in good condition; that the headlight covers a few feet in front on either side of the track. The fireman stated that the horses were struck in a second or two after he discovered them on the track. In view of the undisputed facts in this case, taking them most favorably to the appellee, should the court have instructed the jury, as requested by the defendant company, to return a verdict for the defendant? Taking the evidence most strongly in favor of the plaintiff, if it fails to disclose what is called "evidence of negligence," or if it raises an inference of contributory negligence, either out of the plaintiff's own evidence or out of evidence which stands undisputed in the case, it is the duty of the court to take the case from the jury, either by nonsuiting the plaintiff or by directing the jury to return a verdict for the defendant. 2 Thomp. Trials, § 1661. In a leading English case the rule was thus stated by Erle, C. J.: "The plaintiff is not entitled to succeed unless there be affirmative proof of negligence on the part of the defendant or his servants; and there can be no such proof unless it be shown that there existed some duty owing from the defendant to the plaintiff, and that there had been a breach of that duty. * * * Where it is a perfectly even balance upon the facts whether the injury complained of has resulted from the want of proper care on the one side or on the other, the party who founds his claim upon the imputation of negligence fails to establish his case." Cotton vs Wood, C. B. (N. S.) 568, 571. In the same case the doctrine was thus expressed by Williams, J., in his concurring opinion:

"I wish merely to add that there is another rule of law of evidence which is of the first importance, and is fully established in all the courts, viz.: That, where the evidence is equally consistent with either view,—with the existence or nonexistence of negligence,—it is not competent to the judge to leave the matter to the jury. The party who affirms negligence has altogether failed to establish it. This is a rule which ought never to be lost sight of." 2 Thomp. Trials, § 1675. In Id. § 1678, the author states: "In an action for damages for negligence, where the evidence entirely fails to connect the negligence with the fact of the accident, the court should direct the jury that the plaintiff cannot recover. * * * Thus, where in an action against a railroad company for killing the plaintiff's cow the only evidence was that the bell of the defendant's locomotive was not rung, nor the whistle sounded, as it approached a public crossing, where the cow was run over and killed, it was held that the court ought to have directed a verdict for the defendant, because there was no evidence connecting the negligence of the defendant with the fact of the accident." Holman vs Railroad Co., 62 Mo. 562. The following is a brief summary of the most recently adjudicated cases upon this point. "A railroad company is not liable for an injury to a trespassing animal on its track unless the act was willful, or wanton, or after the discovery of the animal." Electric Co. vs Whitcamp, 58 Ill. App. 141. "A railroad company is not liable for the killing of a horse which has strayed upon its tracks, and without fault on the part of the company, by a passing train, in the absence of reckless, or wanton, or malicious conduct in its agents in running the horse down." Simmons vs Railway Co. (Sup.) 37 N. Y. Supp. 532. "A company is liable for injuries to animals trespassing upon its track only in case of a willful or unnecessary injury, and not for mere failure to give signals for public crossings." Mills & Le Clair Lumber Co. vs Chicago, St. P., M. & O. Ry. Co., 68 N

W. 996, 94 Wis. 336.   "Failure of employes in charge of a
train to ring the bell or sound the whistle on approaching
the crossing does not render the company liable for the
death of a horse on such crossing, unless the injury was
caused by such failure."   Railroad Co. vs Malone (Tex. Civ.
App.) 37 S. W. 640.   "Mere failure to sound the whistle and
ring the bell on an engine while approaching a public cross-
ing, as required by statute, does not render the company
liable for injuries inflicted on stock at the crossing where
there was no connection between such failure and the injury
inflicted."   Railway Co vs Nycum (Tex. Civ. App.) 34 S. W.
460.   "To render a railroad company liable, under Rev. St.
Mo. § 2608, for killing stock at a highway crossing, it must
appear that the bell was not rung, nor the whistle sounded,
and that such neglect caused the damages."   Downing vs
Railway Co., 70 Mo. App. 657.   "Failure of the employes in
charge of a railroad train to give the signal on approaching
a crossing required by Rev. St. Mo. 1889, 2608, does not
render the company liable for animals killed at the crossing
unless such failure was the proximate cause of the accident."
Kirkpatrick vs Railway Co., 71 Mo. App. 263.   As a general
rule, the violation of the duty enjoined by the statute, or by
a valid municipal ordinance enacted for the protection of
persons or property, is negligence per se.   In such cases
the courts, in instructing juries, assume that there was neg-
ligence as a matter of law, provided the facts are undisput-
ed, or charge them that the committing or omitting of the
particular act was negligence.   In states where statutes
have been passed making it the duty of railway companies
to ring a bell or sound a whistle at all public road crossings,
and making the company failing to do so liable for all per-
sons or property injured, the decisions of the courts in those
states are to the effect that the failure to comply with those
statutes is negligence per se.   In the case of Strother vs
Railroad Co. (S. C.) 25 S. E. 272, the statute of South Caro-

(35)

lina (1 Rev. St. § 1685) was to the effect that such failure rendered the company liable for all injuries committed, and in that case the court held the failure to be negligence per se. But, even in states where statutory provisions of this kind prevail, the courts have held — as in Missouri — that the railroad company would not be responsible unless such failure was the proximate cause of the injury. There is no law in force in the Indian Territory requiring railroad companies to ring a bell or sound a whistle when the train approaches a wagon-road crossing. In the case of Railway Co. vs Kerr, 52 Ark. 162, 12 S. W. 329, cited in the appellant's brief, the rule is thus stated by the supreme court of that state: "If the intimation supra that a railroad company is liable if the engineer in charge of the train when the stock is injured 'might, by proper watchfulness,' discover the animal on or near the railroad track in time to avoid injuring it, means that the railroad company owes to the owner of stock that stray upon its track the duty to keep a lookout to prevent injuring it, it states the rule too broadly, 'and in this case the court held that it was error for the court to instruct the jury that it is negligence for a railroad company to fail to keep a lookout for the stock'." In the case of Holman vs Railroad Co., 62 Mo. 562, the supreme court of that state held: "Where a company is sued for killing stock on a crossing, and there is no proof except of the killing, and no signals were given, the company is not liable, and the court should so declare as a matter of law." In the case of Wallace vs Railway Co., 74 Mo. 594, the supreme court held that: "The failure to sound a whistle or ring a bell on a train is not negligence per se, and, in order to make a company liable for such failure, there must be evidence to show some connection between such failure and the injury." In the case of Campbell vs Railroad Co., 4 Hughes, 170, Fed. Cas. No. 2,867, it was held that: "The owner of a horse cannot recover from a railroad company

where it appears that the horse is trespassing on the track in the nighttime, and where it is run over within 100 yards of the place where it was first seen " Counsel for the appellee cites the case of Railway Co. vs Farrington (decided by this court) 1 Ind. Ter. 646, in which occurs the following sentence: "The duty of railway companies to keep a lookout for stock on their tracks is no longer an open question." The undisputed testimony in the case at bar is to the effect that the fireman was looking out for stock at the time the accident occurred. In view of the facts in this case, and the authorities applicable thereto, this court is of the opinion that the motion of appellant to instruct the jury to return a verdict for the defendant in this case should have been granted. There is nothing in the evidence in this case which establishes negligence on the part of the railroad company. It was error to refuse the motion to direct a verdict. The judgment of the court below is therefore reversed, and the cause remanded.

THOMAS and TOWNSEND, JJ., concur.