## STROTHER v. SO. CA. & GA. R. R.

1. HIGHWAY—WORDS AND PHRASES—REV. STAT., 1685.—Where it is shown that a private way has been opened for more than twenty years, and used by the general public for that time, it was not error to submit the question to the jury whether this was such a "traveled place" as is contemplated in sec. 1685 of Rev. Stat.

2. RAILROAD—NEGLIGENCE—EVIDENCE.—When a railroad violates the requirements of the statute as to ringing the bell or sounding the whistle, and a person is injured while crossing a highway, street or traveled place, it will be presumed that such negligence caused the injury, unless the testimony shows that the injury was caused by some other means.

3. RAILROAD — DAMAGES — NEGLIGENCE — REV. STAT., 1685—CASE FOLLOWED.—In an action against a railroad company for damages for the death of a person, under sec. 1685 of Rev. Stat., it is not necessary to show that the failure to ring the bell or blow the whistle was the *proximate* cause of the killing. Following *Wragge* v. *R. R.*, 47 S. C., 105.

4. CHARGE—NEGLIGENCE—RAILROAD.—A request to charge, "That if the evidence shows that A heard or saw the train by which he was killed in time to have avoided the accident, you must find for the defendant," is erroneous, because it took away from the jury the question of plaintiff's "gross or willful negligence."

5. DAMAGES—REV. STAT., 2316.—In statutory actions for injuries causing death, the measure of damages is not the pecuniary loss or injury alone of the beneficiaries, but the jury may give such damages as they think proportionate to the injury resulting from such death. Construing Rev. Stat., 2316.

6. RAILROAD—DAMAGES—NEGLIGENCE.—In an action against a railroad company for damages resulting from the death of a person, the charge, "If the jury find that the deceased was injured at the place

so described because of the neglect to give said signals, and such neglect contributed to his death, then the defendant is responsible for his death, unless the jury further find that the deceased was guilty of gross or willful negligence," is proper.

7. HIGHWAY—WORDS AND PHRASES—REV. STAT., 1685.—Any private way dedicated to the public by *constant* use for twenty years is a "traveled place," under Rev. Stat., 1685. Query: If such road runs through unenclosed lands, would it apply?

Before WITHERSPOON, J., Columbia, October, 1895.

Action by Hester Strother, as administratrix of Robert Strother, against the South Carolina and Georgia Railroad Company, for damages for the death of her intestate, caused by the negligence of the defendant. Judgment for plaintiff. Defendant appeals.

*Messrs. Moore & Thomson*, for appellant, cite: *Contributed:* Rev. Stat., 1692; 3 Rapalje & Mack Digest Railway Law, 287. *Proximate Cause:* 15 S. C., 452; 19 S. C., 28; 30 S. C., 163; Sherman & Redfield on Negligence, sec. 9. *Cause of Injury:* 29 S. C., 318; Whar. on Neg., sec. 438; 2 A. & E. Ency., 651; 34 S. C., 444; 52 Tex., 28; 3 Rapalje & Mack Dig. Ry. Law, 498; 82 N. Y., 424; 2 A. & E. R. Cases, 251. *Failure to Give Signals:* 28 S. W. R. (Mo.), 74. *Damages:* 5 A. & E. Ency., 45; 18 Q. B., 83 (83 Eng. Com. Law Rep., 98); 83 Eng. Com. Law Rep., 104; 93 Ind., 523; 57 Pa. St. R., 335.

*Mr. Jos. W. Barnwell*, also for appellant, cites: *Traveled Place:* Rev. Stat., 1685; 34 S. C., 292, 444; 33 S. C., 136; 41 S. C., 1; 1 Bail., 56; Id., 341; Dudley, 92; Cheves, 1. *Roads:* 6 Rich., 396; 2 Strob., 60; 5 Strob., 267; 5 Tant., 156; 11 S. C., 360; 7 Rich., 390; 11 Rich., 253; 1 McM., 44; 3 Brev., 86; 1 Speer, 17.

*Mr. Jos. W. Muller*, contra, cites: *Traveled Place:* 34 S. C., 299, 450; 11 S. C., 361; 41 S. C., 20; Elliott on Roads and Streets, 600; Rorer on R. R., 531. *Failure to Give Signals:* 29 S. C., 318; Beach on Con. Neg. (2d ed.), sec. 186;

34 S. C., 451. *Negligence:* 46 S. C., 203; 20 S. C., 222; 27 S. C., 271; 25 S. C., 30, 31; 29 S. C., 322; 41 S. C., 19. *Measure of Damages:* Rev. Stat., 2316; 29 S. C., 322. *Charge:* 24 S. C., 503; 36 S. C., 216; 11 A. & E. Ency., 266; 39 S. C, 69. *Adverse User:* 19 A. & E. Ency., 11; 5 Id., 404; 22 Wend. (N. Y.), 425; Angell on Highways, 159. *Prescription:* 1 Bail., 56; Id., 341; Dudley, 92; Cheves, 4; 3 Rich., 85.

July 29, 1896. The opinion of the Court was delivered by

MR. JUSTICE GARY. This was an action for damages by Hester Strother, as administratrix of the estate of her deceased husband, Robert Strother, for the alleged negligent killing of said Robert Strother by the defendant, on the 29th day of July, 1895, while he was crossing its track at a place which, it is alleged, was a public road or traveled place. The third paragraph of the complaint is as follows: "3. That on the 29th day of July, 1895, the intestate, Robert Strother, in the pursuit of his business, was crossing the track of the defendant company at a place on said track which was a traveled place, to wit: the road leading from the Garner's Ferry Road to the Bluff Road, known as Yates' Crossing, in Richland County, used in common by the public, and which the public had a right to use, when the defendant carelessly, unexpectedly, and without proper warning, and due reasonable precaution, and without giving the signal required by section 1685 of the General Statutes of South Carolina, and without ringing its bell or sounding its whistle, caused one of its locomotives, which was drawing a train of cars, to rapidly approach the said intestate, Robert Strother, and struck him and so injured him that death ensued therefrom a few hours thereafter." The defendant, in his answer to the complaint, denied each and every allegation thereof, and set up the defense of gross negligence on the part of plaintiff's intestate.

At the close of plaintiff's testimony, the defendant made a motion for a nonsuit, on the following grounds: "1. That

the plaintiff had failed to produce any evidence going to show that the road in question was such "a traveled place" as contemplated by the statute; and 2. That the plaintiff had failed to adduce any evidence going to show that the accident was caused by the negligence of the company." The motion was refused, and testimony was then introduced by the defendant. The jury rendered a verdict in favor of the plaintiff for $5,000.

The defendant made a motion for a new trial on the ground, *inter alia*, that the verdict was excessive. The presiding Judge signed an order granting the motion, unless the plaintiff would remit on the record all over and above the sum of $2,500. The plaintiff did so remit, and judgment for $2,500 was duly entered up against the defendant. The defendant appealed upon exceptions, the first of which is as follows: "Because his Honor, the presiding Judge, should have granted the nonsuit asked for by the defendant at the close of plaintiff's testimony, and it was error of law in him not to have done so." The following testimony was introduced, relative to the first ground hereinbefore mentioned, upon which the motion was made for a nonsuit:

Mrs. M. A. Yates: "I have been living here since 1870. This road has been open ever since I have been here. It is a mill road, and has been used by the public ever since I have been here."

Henry Yates: "Q. In regard to that road. How long have you been living down there? A. Eighteen or twenty years. Q. How long has that road been open? A. Ever since I have been there. Q. Is that a private or a public road? A. I would consider it a public road; it is the road to the mill, the road to the church and the school house; it is the outlet from the Bluff Road to the McCord's Ferry Road—the Mill Creek Road they call it. Q. What is that mill? A. The Padget Mill—Mill Creek is the name of the creek. Q. State to the Court and jury, is there any one who has the right to stop that road up? A. I think not—

we have not. Q. And it has been a public road? A. To-
bacco wagons and everybody that travels, travels through
there. Q. And the circus sometimes? A. Yes, I suppose
so; we can't stop anybody."

Cross-examinations—John Yates: "Q. Who owns the land
by Yates' Crossing? A. My mother. Q. What is the extent
of that plantation? A. I think, three hundred and some odd
acres in it. Q. About a year ago, did you run a fence across
this road, turning it a little out of its regular course, fifty
yards? A. No, sir; just the least bit—put the fence out the
least bit; did not interrupt the road at all. Q. How far
would you say the road was turned out of its old course—
what is the greatest distance that it departs from this old
course at present? A. It did not interfere with the road
whatever. Q. It was turned from its old course about fifty
yards? A. No, sir, not that far—I do not think more than
three or four feet, not much more than that—I helped to
put it up. Q. When was this done, about a year ago? A.
Yes, sir, this fall; but we did not stop the road up, though.
Q. You call that the Mill Road? A. Yes, sir; that is the
nearest way to Padgett's Mill for the people living in the
swamp through there. Q. You have permitted people to
pass through there without objection? A. Yes, sir; couldn't
help ourselves; didn't like the road being right there in front
of the house. Q. Does the county work the road? A. No,
sir. Q. It isn't claimed as a public highway? A. It isn't
worked by the county, but considered a public highway.
Q. What is this road used principally for? A. Everything.
Q. Used largely for going to Padgett's Mill? A. Padgett's
Mill; tobacco wagons cross it, and people travel from the
Bluff Road, and people out of the swamp go after lumber;
when a freshet makes it impassable, they come through
there and come to Columbia. Q. The road is pretty faint
at certain points between your house and the Bluff Road?
A. I am telling you the reason why: last fall a tremendous
storm blew down trees on the main road, and rather than
cut the trees out, every man would suppose the next man

that came along would cut them, and nobody cut them. Q. So indistinct, it is hard to find? A. No, sir, you can find it. Q. How long have you been living there? A. We moved there in 1870; I have not resided there all the time, some years I have been away from there. Q. Have any members of your family? A. They have; mother has owned the place since 1870; I was never off the place more than two or three years at a time. Q. What road is this that crosses there? A. I live half way between the Garner's Ferry Road and Bluff Road—some people call it the Mill Creek Road, but the right name is the Garner's Ferry; the Bluff Road leads to the swamp, the Garner's Ferry Road goes through under the tin bridge out here; it is used for mill purposes, and going to church, by both whites and blacks—two churches, white and colored church, on the Mill Creek Road, and is used by the swampers during the freshets—for instance, if there's a freshet, and the Mill Creek gets so high they cannot cross, they come to the railroad, come down a private road that I made, side of South Carolina Road, and come to this road, into this road, to the Garner's Ferry Road, and come to Columbia; tobacconists, sewing machinists, and even a circus, I have seen going through there. Q. How long has the road been open? A. I say since 1870; that is as far as I can say. Q. Don't that road lead to Padgett's Mill? A. Yes, sir. Q. Could any of the neighbors shut that road up—suppose you wanted to shut it up, could you do it? A. No, sir, I don't think I could; that was tested. Q. It has been open for the last twenty-five years? A. Yes, sir; to my knowledge, I say since 1870. Q. Used in common by the public? A. Yes, sir."

Ned Denley: "Q. Where do you live? A. I live on Mr. Jimmie Hopkins' place. Q. Do you know the road that leads from the Bluff Road to the Garner's Ferry Road? A. Yes, sir. Q. How old are you? A. Sixty-four. Q. How long has this road been open? A. Ever since I recollect; I remember the road when I was about fifteen years old; I

been traveling it backwards and forwards.  Q.  Where does the road lead from?  A.  From the Garner's Ferry Road, just above Padgett's Mill, and leads out to the Bluff Road, leads into the Bluff Road.  Q.  Who uses that road?  A.  Everybody and anybody who have a call through there."

We cannot say, after reading the foregoing testimony, that there was not some evidence to be submitted to the jury that this was such a traveled place as is contemplated by the statute.

We will next consider the second ground upon which the defendant based its motion for a nonsuit.  The failure on the part of the defendant's servants to ring the bell or sound the whistle in the manner provided by statute was negligence *per se*.  When the defendant violates the requirements of the statute as to ringing the bell or sounding the whistle, and a person is injured by its locomotive, while crossing a highway, street or traveled place, it will be presumed that such negligence caused the injury, unless the testimony shows that the injury was caused in some other manner, which was not done in this case.  The first exception is, therefore, overruled.

The second exception is as follows: "2. Because his Honor erred in refusing the request of the defendant to charge: That the plaintiff must not only satisfy you by the preponderance of the evidence that there was a failure to give the statutory signals, but must go further, and show that such failure was the proximate cause of the accident.  In order to prove that the failure to give the signals was the proximate cause of the accident, the plaintiff must show that the plaintiff's intestate was not aware of the train's approach in time to have avoided the collision, for the only object of a signal is to give such notice.  Unless, therefore, the preponderance of the evidence satisfies you that the deceased did not know of the train's approach in time to have avoided the accident, you must find for the defendant."  An exception erroneous in part will not be sustained, although some of the propositions of

law herein stated are sound.    The request to charge which is set out in the said exception, is erroneous in respect to the *proximate* cause of the accident.    This question is disposed of by the case of *Wragge as adm'x* v. *South Carolina and Georgia R. R. Co.*, 47 S. C., 105, which has been decided recently by this Court.    This exception is also overruled.

The third exception is as follows: "3.  Because his Honor erred in refusing the request of the defendant to charge: That if the evidence shows that Robert Strother heard or saw the train by which he was killed, in time to have avoided the accident, you must find for the railroad company."    The Court said: "I cannot charge it as requested.    I charge you, if you so find, and you conclude that it was gross negligence on his part, then he cannot recover.    In other words, you are to take into consideration where this accident happened; you are to take into consideration what opportunities Robert Strother had at the time he approached that railroad track, if he approached it, to discover whether the train was approaching or not; then you are to determine whether or not, if you conclude that he heard it, whether or not it was such a reckless act, indifferent to his interests, as would amount to gross negligence.    If you so conclude, I charge you that the 'plaintiff cannot recover under the circumstances, because, as I charged you, as I intimated to you at the outset, if you have your eyes, and go walk into obvious danger, and you get hurt, there is no law that will give you a remedy for it; I mean, now, if you have eyes to see, and so on, and go willfully into obvious, patent danger, then there is no law which will give you remedy because of the effects of it."    This request was erroneous, because it would have taken from the jury the question whether the plaintiff, in the language of section 1692 of the Revised Statutes, "was, at the time of the collision, guilty of gross or willful negligence," and whether "such gross or willful negligence contributed to the injury."    *Hankerson* v. *R. R. Co.*, 41 S. C., 19.

The fourth exception is as follows: "4. Because his
Honor erred in refusing the request of the defendant to
charge: That the measure of damages in statutory actions
for injuries causing death is compensation for the pecu-
niary loss to the survivors from the death of the deceased."
The presiding Judge said: "Now I have been requested to
charge you as to the measure of damages.   What does the
statute say?   The statute says, if the party shows
that he is entitled to recover judgment, what shall
the jury give?   It says, such damages as they really
thing proportionate to the injury resulting from such death
to the party for whom or whose benefit such action shall be
brought.   What injury she and her children have sustained,
you will have to give, if the plaintiff is entitled to recover at
all.   You are to be guided by the evidence, you cannot go
outside of the evidence.   You will not permit your judg-
ment to be influenced, you cannot allow matters of sym-
pathy or anything of that kind."   The words of the statute
(Revised Statutes, section 2316,) are as follows: "In every
such action the jury may give such damages as they may
think proportioned to the injury resulting from such death
to the parties, respectively, for whom and for whose benefit
such action shall be brought."   In the case of *Petrie* v. *R.
R.*, 29 S. C., 303, Mr. Chief Justice McIver says: "Again, it
will be noticed that our statute, unlike many others of a
similar character, does not speak of a *pecuniary* loss or in-
jury, which might possibly tend to show that the injury,
for which damages are allowed, was confined to the depri-
vation of some legal claim susceptible of measurement by
a pecuniary standard; but its language is much broader,
and gives to the jury the right to award such damages as
they may think proportionate to the injury resulting from
such death, and as it is quite certain that the beneficiaries
of the action may sustain injury by the death of a relative,
over and above the loss of any legal claim which they may
have upon such relative, it follows that the view contended
for cannot be sustained."   The request to charge is incon-

sistent with this ruling, and the fourth exception is also overruled.

The fifth exception is as follows: "5. Because his Honor erred in charging the jury to the effect that if they found that the plaintiff's intestate saw or heard the train by which he was killed, in time to have avoided the accident, such finding would not be sufficient to entitle the defendant to a verdict; but that before they could find for the defendant, they must conclude that there was gross negligence on the part of plaintiff's intestate." In connection with this request his Honor says: "I have been requested to charge you: 'If the jury find that the deceased, Robert Strother, was injured at the place so described because of the neglect to give said signals, and such neglect contributed to his death, then the defendant is responsible for his death, unless the jury further find that the deceased was guilty of gross or willful negligence.' I so charge you, as I understand the Supreme Court of this State has already passed upon that point." Sec. 1692 of the Revised Statutes is as follows: "If a person is injured in his person or property, by a collision with the engines or cars of a railroad corporation, at a crossing, and it appears that the corporation neglected to give the signals required by this article, and that such neglect contributed to the injury, the corporation shall be liable for all damages caused by the collision, unless it is shown that, in addition to a mere want of ordinary care, the person injured, or the person having charge of his person or property, was, at the time of the collision, guilty of gross or willful negligence, or was acting in violation of the law, and that such gross or willful negligence or unlawful act contributed to the injury." His Honor's charge was in harmony with the provisions of this statute.

The sixth and seventh exceptions are as follows: "6. Because his Honor erred in charging, as requested by the plaintiff, that 'twenty years use of a road (traveled place) by the public, gives the public the right to travel over same.' 7. Because his Honor erred in charging the jury as follows:

'Now if you allow a person to, or if you open a road through your land, leading from one public road to another, and you and those through whom you claim, or you alone, allow the public to use that, without any protest on your part, without exercising any right to stop it, for twenty years, then there is a prescriptive right upon the part of the public by such long indulgence upon the part of the owners of the land, and the public use of it. They have acquired the right to use it, and you can't stop them. If you do, you will violate the law. So that is the test to which I direct your attention.' " His Honor says: "I have been requested to charge you: 'By the term "traveled place," as used in the statute, is meant a way along which persons are not only accustomed, but have a right to travel; and twenty years use of a road by the public gives to the public the right to travel over the same.' I so charge you, gentlemen. Now it is alleged in this complaint that this was known as Yates' Crossing, that it was used in common by the public, and which the public had a right to use, at the time it is alleged that this person was killed; it was a road leading, as alleged by the plaintiff, from Garner's Ferry Road to Bluff Road. Now, gentlemen, I have admitted testimony before you here, and if you believe that this road was not a public road, that it is not dedicated to the public, then this statute does not apply. It would not be necessary at such a place to ring the bell or give the whistle; but if you believe from the evidence that the public has been using or were using this road at the time of this 29th of July last, when it is alleged this deceased person was killed; if you conclude that the public generally did and had the right to travel that road in crossing the railroad, and that right had accrued to the public for the past twenty years, then I charge you that it is a public road, in contemplation of the statute, because the statute says the test is, had the public the right to use it. Now if you allow a person to, or if you open a road through your land, if a road is opened upon your land leading from one public road to another,

and you and those through whom you claim, or you alone, allowed the public to use that without any protest on your part, without exercising any right to stop it, for twenty years, then there is a prescriptive right upon the part of the public·by such long indulgence upon the part of the owners of the land, and the public use of it, they have acquired the right to use it, and you can't stop them; if you do, you will violate the law. So that is the test to which I direct your attention." When this part of his Honor's charge is considered as a whole, it will be seen that he impressed upon the jury: 1st. That if the road was not dedicated to the public, then the statute did not apply. 2d. That in order to make a road public, it must not only be used by the public generally, but there must have also been a right to use the road on the part of the public for twenty years. In this was no error of which the defendant can complain. *Hankinson* v. *R. R. Co.*, 41 S. C., 1. Appellant's attorney in his argument admits that where lands are enclosed, the mere use of a right of way over such enclosed lands for twenty years by the public, will raise the presumption of a grant of a right of way thereover, but insists that this rule has no application, where the lands are unenclosed. Admitting that this is correct, the appellant cannot derive any benefit from it in this case, because, as a general proposition, the charge of his Honor was correct, and if the appellant wished the jury to be charged specifically as to the difference in principle where the lands are enclosed or unenclosed, he should have presented requests to charge to that effect— especially since it does not appear that the appellant seriously contested the fact, when the case was tried on circuit, whether the lands surrounding the road were enclosed or unenclosed.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.