10447

NOLF *ET AL.* v. PATTON *ET AL.*

(103 S. E. 528.)

1. DEATH—PARTY ALLEGING SURVIVORSHIP HAS BURDEN OF PROOF.—In action between heirs of a husband and wife who perished in the same fire, the husband's heirs, having alleged that he survived his wife, had burden of so proving.

2. EVIDENCE—PLAINTIFF HAS BURDEN OF PROVING ALLEGATIONS OF COMPLAINT.—Generally the plaintiff has the burden of sustaining the allegations of his complaint.

3. DEATH — EVIDENCE HELD TO SHOW WIFE SURVIVED HUSBAND.—In action between the heirs of a husband and wife perishing in the same fire, where it was alleged that the husband survived wife, evidence *held* to sustain verdict for the wife's heirs.

4. APPEAL AND ERROR—EXCEPTIONS NOT CONTAINING COMPLETE ASSIGNMENT OF ERROR NOT CONSIDERED.—Exception which does not contain within itself a complete assignment of error, as required by Supreme Court Rule 5, sec. 6, will not be considered on appeal.

Before WILSON, J., Barnwell, ——. Affirmed.

Action by John Nolf *et al.* against John Patton *et al.* From judgment for defendants, the plaintiffs appeal.

Following are the exceptions referred to in opinion:

Exceptions: (1) That his Honor erred in charging the jury that the burden was on plaintiffs to prove that Ralph Nolf was the survivor, the error being that if plaintiffs proved either that Ralph Nolf was the survivor or that Ralph Nolf and his wife died at the same time, in which event she could not inherit from him the plaintiffs would be entitled to recover.

(2) That his Honor erred in charging the defendants' first and fourth requests of charge, without having charged the jury: "And in the absence of such proof the rights of property as by succession, etc., are to be settled on the theory that all died at the same time."

(3) That his Honor erred in charging the defendants' sixth and ninth requests of charge, the error being in requir-

ing the plaintiffs to establish survivorship; the law being that in the absence of proof as to survivorship the rights of property as by succession are to be settled on the theory that all died at the same time, and in such event the wife could not inherit from the husband, nor the husband from the wife.

(4) That his Honor erred in the outset in his charge to the jury: "This is a case of where the whole family was wiped out—husband, wife, and child. Both sides claim that the house was burned down and that the bodies were burned. I don't know whether it was the act of some criminal, or what; I don't know; but anyway this is certainly a very sad case to try"—thereby intimating to the jury that the burning of the Nolf home might have been the act of some criminal, which was prejudicial to the plaintiffs upon the theory that if a criminal committed the act the husband would in all likelihood have been first assaulted, and leaving the jury to infer from such intimation that the wife survived; whereas, in truth and fact there is not a particle of evidence in the case to sustain such theory, and his Honor erred in so stating to the jury, which was never corrected in his charge as a whole.

(5) That his Honor erred in charging the first, second, third, fourth, fifth, and sixth requests of charge submitted by defendants' counsel, and that by so doing his Honor intimated and so charged the jury that the plaintiffs must prove their case by the preponderance of the evidence, and that he who asserts survivorship must establish that fact by .the greater weight of the evidence; the law being that in a common disaster to which there were no eyewitnesses the jury was to arrive at the question of survivorship from the facts and circumstances surrounding the same, and to render a verdict from such circumstances surrounding the death of the persons as are in evidence, and that a finding or verdict that one of the persons survived the other may thereby be

warranted as a question of fact, though there is no direct or positive evidence upon the question.

(6) That his Honor, in charging the plaintiffs' first request as follows, "Where the circumstances surrounding the death of the person are in evidence, a finding or verdict that one of the persons survived the other may thereby be warranted as a question of fact, though there is no direct or positive evidence upon the question," charged the law applicable to the case; and by charging the defendants' first, second, third, fourth, fifth, and sixth requests of charge, which was not the law applicable to the case, he thereby destroyed the plaintiffs' first request of charge, which had the effect of reversing, annulling, and bringing to naught plaintiffs' first request of charge.

(7) That his Honor erred in charging the defendants' seventh, eighth, and tenth requests of charge; whereas, his Honor should have charged the jury that, under the conditions of the policy, "if any beneficiary die before the insured, the interest of such beneficiary shall vest in the insured, unless otherwise provided herein."

(8) His Honor erred in instructing the jury as follows: "Now, here is the form of your verdict. If you find for the plaintiffs, that is, if you find that the husband was the last to die, and survived the wife, your verdict will be on this, 'We, the jury, find for the plaintiffs' that they are the heirs and distributees at law of George Ralph Nolf, who was the last survivor in the common disaster.' If that is your verdict, sign your name, Mr. Foreman. If you find that that is not the case, but that the wife survived, say, 'We, the jury, find for the defendants that they are the heirs and distributees at law of Getty Patton Nolf, who was the last survivor in the common disaster' "—in that said instructions prohibited the jury from finding for plaintiffs in case they should find both parties died at the same time in the com-

mon disaster, in which event neither should inherit from the other.

(9) That his Honor erred in not granting plaintiffs' motion for new trial, for the reason that there was no evidence in the case from which an inference could be drawn that the disaster was committed by a criminal, or that Ralph Nolf was murdered, or that his wife survived him.

(10) That his Honor erred in not granting plaintiffs' motion for a new trial, for the reason that there was not sufficient evidence adduced on the part of the defendants from which it could be inferred that Getty Patton Nolf survived Ralph Nolf.

(11) That his Honor erred in not granting plaintiffs' motion for a new trial, for the reason that there was not sufficient evidence to warrant a finding in favor of the defendants.

(12) That his Honor erred in not granting a new trial, for the reason that the verdict of the jury was not responsive to the ruling of law by his Honor, in that the jury, in order to find that Getty Patton Nolf survived Ralph Nolf, had to presume that the said Ralph Nolf was murdered; whereas, under the well settled principles of law, murder cannot be presumed.

*Mr. J. O. Patterson, Jr.,* for appellants, cites: *If two persons perish in a common disaster, the question of survivorship, in absence of evidence, is assumed to be unascertainable, and property rights are disposed of as if death occurred at the same moment:* 78 Am. St. Rep. 842; 41 Am. Dec. 424; 10 L. R. A. 550. *But if there is any evidence, even but a shadow, it must govern:* Cheves 99. *No evidence to support a verdict it is error of law to refuse to set it aside:* 66 S. C. 61. *Where jury has been erroneously instructed new trial should be granted without inquiry as to other grounds they may have based their verdict on:* 62 S. C. 1.

*Self-destruction will not be presumed. Nor from the mere fact of death will murder be presumed:* 127 U. S. 666.

*Messrs. Harley & Blatt* and *Chas. Carroll Simms,* for respondents, cite: *Charge should be considered in its entirety:* 95 S. C. 302; 103 S. C. 343; 111 S. C. 364. *Burden of proof on legal representatives to prove death of beneficiary named before the insured:* 92 Am. St. Rep. 614; 10 L. R. A. 550. *In common disaster survivorship must be proved by party asserting it:* 198 Ill. 590; 6 Am. St. Rep. 162; 75 N. Y. 78; 41 Am. Dec. 518; 8 H. S. Cas. 183; 1 Taylor Evidence (9th Ed.) 183; Greenleaf Ev. (16th Ed.) 126. *Failing in this the property remains vested as it was before the calamity:* Lawson's Presump. Ev. 259 (Rule 54). *Circumstances warrant finding as to survivorship even where there is no direct or positive evidence:* 22 A. & E. Enc. Law 1252. *Rules apply whether common disaster was from accident or murder:* 39 Ann. Cas. 674; 51 L. R. A. 871; 26 Ann. Cas. 871; 58 L. R. A. 441.

June 28, 1920.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

The following statement of the facts appear in the record :

"This action was commenced April 14, 1919, by the above named plaintiffs, who are the father, brothers and sisters, nieces and nephews of George Ralph Nolf; the defendants being brothers and sisters of Getty Patton Nolf, the wife of the said George Ralph Nolf. On December 7, 1917, in the early morning, between 4 and 5 o'clock, the house in which the said George Ralph Nolf and his wife and baby resided was destroyed by fire, and the said George Ralph Nolf and his wife and baby were burned to death and beyond recognition in the said conflagration. The house was a four-room house with an 'L' on the back in which was located the

kitchen with a piazza on the 'L.' The back room on the main body of the house was the dining room; the other back room in the main body of the house was the bedroom of Mr. Nolf and his wife and baby, which opened into the dining room. After the house had burned down and had cooled off sufficient to make a search for the bodies of the Nolf family, the wife and baby were found in the kitchen near the stove; the body of Mr. Nolf, the husband, was found in the door leading from the said bedroom into the dining room.

"That the said George Ralph Nolf left a personal estate consisting of $3,440.80 life insurance policy, $851.97 in a bank at Marion, and an automobile which since his death sold for $760, aggregating the sum of $7,080.73. That A. L. Lowman and John Nolf were duly appointed administrators upon the estates of George Nolf and his wife, Getty Patton Nolf. The complaint alleged the plaintiffs to be the heirs and distributees at law of the said George Ralph Nolf, and that his wife and baby predeceased him. The defendants' answer denies the allegations of the complaint and demands strict proof thereof, further alleging that the wife of the said George Ralph Nolf survived him and the said baby.

"At the close of plaintiffs' testimony the defendants moved for a nonsuit, which motion was refused. The defendants put up their evidence, and at the close of all the evidence, the defendants moved for a direction of a verdict on the same grounds as made in the motion for a nonsuit, which motion was refused. The plaintiffs then moved the Court for a direction of a verdict upon the grounds as stated in the record, which was refused, the case was submitted to the jury, and the jury found for the defendants, and the plaintiffs now ask that judgment be reversed upon exceptions herein set out. That at the commencement of the cause, and before any evidence was adduced, it was agreed

that the equitable distribution of the assets be left to future administration according to law, and the only question to be decided by the jury was that of title to the property, including the question of survivorship."

The first question that will be considered is whether there was error on the part of his Honor, the presiding Judge, in ruling that the burden rested upon the plaintiffs to prove that George Ralph Nolf survived his wife. The complaint so alleges, and the general rule is that it is incumbent upon the plaintiff to sustain the allegations of his complaint. There is nothing in the case of *Pell v. Ball,* Cheves Eq. 99, upon which the appellants rely, inconsistent with that principle.

The next question to be determined is whether the verdict of the jury was a reasonable inference from the testimony. It was admitted that C. T. Newton, a witness for the plaintiffs, if present, would swear as follows:

"That upon arriving at the scene deponent found that the house was on fire, and that the said fire had started in the kitchen, and when deponent reached the premises the kitchen was so far consumed by the fire that it was impossible for any one to enter said kitchen, and that said fire at this time was spreading into the main body of the house, which was burning very rapidly; that deponent found Mr. Ralph Nolf lying in the door of the bedroom leading into the dining room, and that he was burned beyond recognition; that deponent also found Mrs. Nolf with her baby in her arms in the kitchen near the cooking stove, and that she and said baby were likewise burned beyond recognition."

C. M. Pantall, another witness for plaintiffs, thus testified:

"After the house had burned down Mr. Nolf was found lying just outside of the bedroom door which leads into the dining room. We found Mrs. Nolf and the baby in the kitchen. The wife and baby were lying on their faces; the

baby was in its mother's arms. When I reached the fire it had about practically half burned the kitchen; it had made a big headway. When I first went in the front door there was a pillow laying in the middle of the front room and it was on fire, and I threw it out. The whole thing was a mystery. I cannot account for the pillow being on fire; there were no sparks flying at that time and none of the ceiling was falling in at that time. The house was so full of smoke I could not hardly stay in there. I had to get out as quick as I could or I would have suffocated.

"The Court: In what direction was the wind blowing; was it blowing from the kitchen to the body of the house, or how was it blowing? A. Yes, sir; it was blowing right over the body of the house."

H. P. Anderson, another witness for plaintiffs, testified:

"The fire burned from the kitchen into the main part of the house. It burned from the kitchen to the dining room and then to the two main rooms. It burned pretty fast. Mr. Nolf was right in the dining room door and his head was facing towards his bedroom. The house had sills. The sills were not consumed in the fire, but were charred. Mr. Ralph's body was close to the sill leading to his bedroom where his body was found. I saw blood and brains there on the edge of the sill."

Dr. J. G. Wooley, witness for the defendants, testified:

"On examination of the bodies I could not find anything except on the head of the father.

"The Court: He was not burned otherwise, doctor? Witness (continuing): Oh, yes; I could not find any evidence of injury or contusion, though, or anything like that, except the skull of the father was practically burned off of the portion of the head, but on the right back portion of the head, just about here (indicating), there was an indentation of about an inch thick, I would say. It was about an inch deep to the best of my judgment. It was a burned

hole, with a portion of his skull pushed into the burned sub-
stance of the brain.    That hole was about an inch in diam-
eter, and had the appearance of having been made by some
blunt instrument, similar to the head of a hatchet or ham-
mer, I would say.    Q. State whether or not that place in the
skull that you saw could have been made by something fall-
ing on Mr. Nolf's head?    A. From the position of his body
it could not have happened that way.    He was lying on his
back and that fracture was in the back of the head here
(indicating).    Q. Is there any other reason why a scantling
of that kind of falling timber did not make it?    A. If it
had been made after the skull was burned off, you would
have had a different appearance of the skull.    When the
skull was burned it left the membrane pretty well intact,
and if a piece of timber had fallen on him, it would not have
made a round depression, but it would have torn it out in
some way or other, and it would not have been smooth and
round as it was.    It had a smooth and round appearance.
Q. Could a piece of wood have made such a depression as
you found on his head?    A. No, sir; not after his death.
Q. State whether or not from your examination that was
made before he was burned?    A. Yes, sir.    That is my
impression of it; it was made before he was burned.    That
is my opinion."

Mrs. Myrtle Lowman, a witness for the defendants, tes-
tified:

"My sister had some nice silverware, cream and sugar
dishes, knives and forks, and all kinds of nice silverware;
they were never able after the fire to find any of that silver-
ware.    They found some knives, but they were not the
silver knives.    Sometimes Mr. and Mrs. Nolf and the baby
occupied the same room and sometimes they slept in differ-
ent rooms.    When he worked hard she would take the baby
off in another room so that he could get his rest, and they
would sometimes occupy separate rooms and beds.    In the

winter time they were more apt to sleep together than in the summer time."

The foregoing testimony shows that it was not necessary to resort to conjecture, which is an unsatisfactory manner of determining such issues (*Pell v. Ball,* Cheves Eq. 99) ; but, on the contrary, shows that the verdict of the jury was sustained by the testimony.

We have not considered those exceptions that violate Rule 5, sec. 6, of the Supreme Court (90 S. E. 7), which provides that "Each exception must contain within itself a complete assignment of error, and a mere reference therein to any other exception then or previously taken, or request to charge," will not be considered.

The exceptions which we have not discussed fail to assign any error prejudicial to the rights of the appellants.

Affirmed.