14460

COLLINS v. ATLANTIC COAST LINE R. CO. *ET AL.*

(190 S. E., 817)

286

April, 1936.

*Messrs. Wright & Burroughs* and *Woods & Woods,* for appellant,

*Messrs. G. Lloyd Ford, E. S. C. Baker* and *J. Coker Anderson,* for respondent,

April 5, 1937.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The defendant, Atlantic Coast Line Railway Company, owns and operates a branch railroad from its main line at Elrod, N. C., to Myrtle Beach, S. C. This branch line passes through Horry County, in this State, and therein intersects at right angles an unpaved public highway at a point known as Cebu crossing. Thomas A. Anderson and his wife, Sarah D. Anderson, an elderly couple, lived upon their farm approximately two miles east of this crossing.

On December 12, 1933, a short time before noon, Mr. and Mrs. Anderson, in a Ford sedan automobile, with Mrs. Anderson driving, proceeding westward from their home toward the railroad, entered upon the crossing at Cebu. While on the crossing, an unscheduled freight train of the defendant, designated as an extra special, and composed of the engine, tender, three cars, and the caboose, struck the automobile, as the result of which both were killed.

This action was brought by the plaintiff, as administratrix of the estate of Sarah D. Anderson, against the Atlantic Coast Line Railroad Company and its section master, A. L. Grainger, for damages, actual and punitive, for the alleged wrongful death of Sarah D. Anderson, for the benefit of her surviving heirs at law, under the provisions of Section 412 of the Code of 1932.

The specifications of negligence and willfulness contained in the complaint fall into two general classes—those charged

against the company and the section master as joint tort-feasors in failing to properly construct, repair, and keep in repair the roadbed and crossing, and to adequately maintain the railroad crossing; and failure to provide railroad crossing signs on the highway to warn travelers of the proximity of the crossing—and those charged against the company alone in its management and operation of the train on the day and at the time in question, in that, (a) the train was being run at a high, excessive, and dangerous rate of speed; (b) without any proper or adequate lookout, safeguards, and warnings; and (c) failing to give the statutory crossing signals.

The defendants denied generally the material allegations of the complaint, and alleged that the injuries sustained by the plaintiff's intestate were the result of her gross negligence and gross contributory negligence, in that she approached and attempted to pass over an open crossing, where she could have seen or heard the train in time to stop had she looked and listened, and that this alleged negligence on her part constituted the direct and proximate cause of her death.

The trial resulted in a verdict for the plaintiff against the defendant, Atlantic Coast Line Railroad Company, for actual and punitive damages. No verdict was rendered against its codefendant, A. L. Grainger, the section master.

The defendant railroad company appeals from the judgment entered below, and assigns error to the trial Court for failure to grant its motions for nonsuit, for a mistrial, and for a directed verdict; the appeal also questions the correctness of certain portions of the trial Judge's charge to the jury, and failure to instruct the jury in accordance with requests to charge. A motion was also made by the defendant company for a new trial, which was refused.

The motion made by the appellant for a nonsuit was based upon the sole ground that it appeared from the undisputed evidence that Sarah D. Anderson and Thomas A. Anderson were wife and husband; that both perished in a common

tragedy, childless, and that the testimony did not show that Mrs. Anderson survived her husband, which was the theory upon which the action was brought. The plaintiff disclaimed that the action was brought upon this theory, and maintained that there was testimony offered by which it could reasonable be inferred that both Mr. and Mrs. Anderson died instantly, and at the same time, and that neither survived the other. In overruling the motion, the Court held that it was reasonably inferable from the evidence that there was no survivorship, and that, if such was the case, the right of action would accrue on behalf of the heirs at law of Mrs. Anderson, because, if their deaths occurred at the same moment, it could not be said that a cause of action would accrue to Mr. Anderson as an heir at law of his wife, and that, therefore, the case at bar was brought for the benefit of the proper parties, to wit, the heirs at law and distributees of Mrs. Anderson.

The undisputed testimony is that, when the train collided with the automobile, Mrs. Anderson was driving the car, and her husband was sitting on the front seat at her right, from which direction the train approached. Their family physician, who reached the scene of the accident within a few minutes after the accident occurred, testified that both of them had received fatal injuries to the head. They were dead when he reached them, and he expressed the positive opinion that both died instantly, without any period of time intervening between their deaths. He predicated his opinion upon the condition of the bodies, the wounds they had sustained, their ages, their condition when living, and his knowledge of that condition known to him as their family physician. He expressed the belief that each died at the moment of the impact, and that neither survived the other.

The appellant contends that under the common law there is no presumption of survivorship, and, in support of the position that survivorship must be proved by the party who alleges it, they cite the cases of *Pell v. Ball's Ex'rs.*, Cheves,

Eq., 99, and *Nolf et al. v. Patton et al.,* 114 S. C., 323, 103 S. E., 528. In the *Pell case,* husband and wife were traveling on a steamer from Charleston to Savannah, and while at sea one of the boilers of the steamer exploded and both perished in the common tragedy. In the legal contest which followed, an action was brought in which it was alleged that Mrs. Ball survived Mr. Ball, her husband. The Court held that the burden of proof of survivorship was on the heirs of Mrs. Ball, who asserted it. It appears from the evidence in that case that Mrs. Ball was seen and was heard to call loudly for her husband immediately after the explosion, but that he was neither seen nor heard thereafter. Upon this and other evidence in the case the Court held that Mrs. Ball had survived her husband.

In *Nolf v. Patton, supra,* husband, wife, and baby, who were living in the same house, were all burned to death when the house was destroyed by fire. They were burned beyond recognition, but, on examination of the bodies, it was found that there was a wound on the head of the father which had the appearance of having been made by some blunt instrument, and a physician testified that in his opinion the wound was received before Mr. Nolf was burned. The Court upheld the judgment, upon the ground that the evidence sustained the verdict of the jury, to the effect that Mr. Nolf died first.

It should be observed that the complaint in the case at bar contains no allegation of survivorship. On the contrary, the theory of the plaintiff's case is that there was no survivorship, but that both Mr. and Mrs. Anderson died at the same instant of time, and that, therefore, the heirs and distributees of Mrs. Anderson, as stated in the complaint, are the only survivors to take under the statute. The plaintiff neither alleges nor attempts to prove survivorship. It appears that the defendants are the persons who are asserting that Mr. Anderson survived his wife. The burden

would, therefore, be upon them to prove that which they assert. The record discloses no such proof.

In *Nolf v. Patton, supra,* there was testimony on which survivorship could be determined, but in the instant case quite the contrary is true. There is no testimony that Mr. Anderson was living at any time after his wife's death. We see no error in the action of the trial Judge in overruling the motion for a nonsuit.

The defendant moved upon two grounds for a directed verdict, contending that its affirmative defenses of gross negligence and gross contributory negligence on the part of plaintiff's intestate were established, and that the evidence in the case was susceptible of no other reasonable inference.

More than thirty witnesses were examined during the trial of this case. We also have the benefit of an elaborate map of the locus, which was introduced in evidence. It is not necessary to dwell at too great length upon the evidence, which was sharply conflicting upon the vital issues presented.

The road traveled by plaintiff's intestate leads toward the railroad crossing at Cebu in practically a straight line. As the automobile neared the crossing it passed first through a wooded area, then through a pasture on which there was undergrowth, but it is the contention of the defendant that, when it reached a point 237 feet from the crossing, the vision to the right, from which direction the train approached, was not obstructed by any physical objects, and that, if the driver of the car had looked, she could have seen the oncoming train a distance of several hundred feet—certainly in time for her to have stopped the automobile before it reached the crossing.

The testimony for the plaintiff tended to show that the statutory crossing signals were not given; that it was a cloudy, overcast day, and that the approaching train could not be fully seen until it was practically upon the crossing, because at that point the train ascended a grade, emerging from a cut, with the embankment partially obstructing the

view; that at a point 1,520 feet away the level of the railroad was 20 feet below the elevation at the crossing. The railroad crossing at Cebu itself is known as a grade crossing. It was undisputed that Mrs Anderson neared the crossing at a speed of about 10 miles per hour, and that she was a careful and cautious driver.

Only three persons actually witnessed the accident; the engineer and the fireman, who were in the actual operation of the train, and a young man who had been plowing in an adjoining field, but who at the time of the accident had ungeared his team near the field gate, about 15 steps from the railroad crossing on the west side, and was preparing to drive the team out of the gate. This young man testified for the plaintiff, and his testimony sustained a heavy attack in the trial Court. A similar attack is made here, but it is to be observed that his testimony in many material respects was corroborated by witnesses for the defendant. He said that as Mrs. Anderson's automobile in entering upon the crossing passed over the first rail it stalled, and that the train at that time was about 55 yards away; that Mrs. Anderson appeared to reach for the door as though attempting to get out, but that the train was upon her before this could be done. It is admitted that the train was traveling at a speed of about 35 miles per hour. But a defense witness said that, if the automobile had been in motion, it could have crossed before the train reached the crossing.

There was much conflict of testimony with reference to the physical condition of the crossing. Witnesses for the plaintiff testified that it is what is known as a dirt crossing, and that at the time of the accident, and for a considerable time prior thereto, it was in a state of disrepair, not only with the ends of the ties exposed, but that the entire width of the rail—5 inches—projected above the ties; and that much travel had knocked the dirt away from between the rails so as to expose the ties; that passage over this crossing had to be negotiated slowly, and that it was safer to cross

in low gear, otherwise the vehicle would be bounced and jolted roughly across; that the condition of the crossing was such that an automobile had a tendency to choke down after the front wheels had crossed the first railroad rail. It was undisputed that the railroad at this point was at least 12 inches above the highway, which necessitated a slight upward grade on the highway, which commenced about 12 feet from the track. It was also undisputed that the rules and regulations of the defendant company required that the space between the rails be filled to within an inch and a half of the top of the rails, and that the ties be covered so as to facilitate the passage of vehicles. Witnesses for the defendant company testified that the space between the rails was filled with dirt and clinkers in accordance with this rule. There was no railroad crossing signal on the public highway, indicating the presence of the crossing, but two were placed there after the accident; and there was evidence tending to show that the crossing was repaired and the space between the rails filled in after the accident. This repair work was sharply denied by the defense.

Harvey Nabers, the young man who was working in the field, testified that the statutory crossing signals were not given, but that short, rapid blasts were blown when the engine was 55 yards from the crossing. The engineer says that his position on the right-hand side of the engine cab prevented his seeing the Anderson car which was approaching the crossing from his left; that as the train neared the crossing he was looking at Nabers, who at the time was about to drive his team out of the gate near the track. This gate, however, did not open toward the railroad right of way, but opened upon the road which the Andersons were traveling; that, when he reached a point about 55 yards from the crossing, the fireman on the opposite side of the cab gave the alarm with reference to the automobile, and at that moment he saw the car enter upon the crossing; he then gave the rapid blasts from the engine whistle and

applied the emergency brakes, and the collision occurred almost instantly, with the car apparently stopped on the crossing.

The fireman testified that he kept a lookout to the left, and did not see the automobile approaching the crossing until the train was about 65 yards therefrom, and that the automobile was about the same distance from the crossing. It was then that he warned the engineer about its approach. If this testimony is to be believed, with both train and automobile equi-distant from the crossing, and with the automobile traveling at the rate of 10 miles per hour, and the train traveling at a speed of 35 miles per hour, it is difficult to see how they both reached the crossing at the same time. Plaintiff argues as a reasonable inference from this testimony that the train was much farther down the track than the fireman places it, and that it could have been stopped if the proper lookout had been kept by the trainmen, in time to have avoided the accident. The fireman, when later recalled to the stand, varied his testimony, but it is well established that it is the jury's province to pass upon conflicts in testimony. Apropos of this testimony, a witness for the plaintiff testified that the engineer made the statement to him after the accident that he could have stopped the train before hitting the car, but that he thought the automobile would move on off. The engineer denied making this statement. While there is evidence in the record tending to show that Mrs. Andrson knew the location of this crossing, there is no positive evidence that she ever made this crossing prior to the date of her death. There is evidence that there are other crossings which she did use, and with which she was familiar.

As already stated, there is a sharp conflict in the testimony upon all the material issues. Upon a careful consideration of all of it, this Court cannot say as a matter of law that the defendant was not guilty of actionable negligence, or that the plaintiff's intestate was guilty of gross

negligence or gross and willful contributory negligence. The rule is stated in *Chisolm v. Seaboard Air Line Railway*, 121 S. C., 394, 114 S. E., 500, that a traveler approaching a railroad crossing must look and listen in both directions for approaching trains, if not prevented from so doing by the fault of the railroad company, and to the extent the matter is under his control, must look and listen at a place and in a manner that will make the use of his senses effective. We adhere to this rule. It was quoted with approval in *Robison v. Atlantic Coast Line R. Co.*, 179 S. C., 493, 184 S. E., 96.

It was held in *Osteen v. Atlantic Coast Line R. Co.*, 119 S. C., 438, 112 S. E., 352, that, if a truck driver attempted to cross immediately in front of an approaching train, although he saw the train, or by exercising the slightest degree of care could have seen and heard it, and to a person of ordinary prudence such an attempt to cross was obviously dangerous, reckless, or wanton, he was guilty of gross, contributory negligence, recklessness, and wantonness as a matter of law. We adhere, also, to this rule, which was quoted with approval in *Robison v. Atlantic Coast Line R. Co., supra.*

The evidence in this case is susceptible of more than one reasonable inference as to the proximate cause of the death of plaintiff's intestate, and was properly submitted to the jury. *Bamberg v. Atlantic Coast Line R. R.*, 72 S. C., 389, 51 S. E., 988; *Strother v. South Carolina & G. R. Co.*, 47 S. C., 375, 25 S. E., 272; *Bowen v. Southern R. Co.*, 58 S. C., 222, 36 S. E., 590; *Cooper v. Georgia, C. & N. R. Co.*, 56 S. C., 91, 34 S. E., 16; *McBride v. Atlantic Coast Line R. Co.*, 140 S. C., 260, 138 S. E., 803; *Glenn v. Southern R. Co.*, 145 S. C., 41, 142 S. E., 801; *Neely v. Carolina & N. W. R. Co.*, 123 S. C., 449, 117 S. E., 55; *Miller v. Atlantic Coast Line R. Co.*, 140 S. C., 123, 138 S. E., 675; *Key v. Carolina & N. W. R. Co.*, 165 S. C., 43, 162 S. E., 582; *Wragge v. South Carolina & G. R. Co.*, 47 S. C., 105, 25 S. E., 76, 33 L. R. A., 191, 58 Am. St. Rep.,

870; *Curlee v. Southern R. Co.*, 122 S. C., 361, 115 S. E., 628, and *Still v. Atlantic Coast Line R. Co.*, 113 S. C., 553, 101 S. E., 836.

The facts in the recent cases of *Bogan v. Southern R. Co.*, 179 S. C., 394, 184 S. E., 143, and *Funderburk v. Powell et al.*, 181 S. C., 412, 187 S. E., 742, differentiate those cases from the case at bar, as a reference thereto will show.

■ The next contention of the appellant is that Mr. Ford, one of plaintiff's counsel, made an improper and unfair argument to the jury.

The record contains an affidavit from each of the counsel engaged in the case, together with a statement of the trial Judge with reference to the incident referred to. It is stated in the affidavits submitted by the counsel for the defense that Mr. Ford, who made the closing argument in the case, told the jury that they "need not worry about any judgment against Mr. Grainger, since he would not be called upon to pay one cent of it," or words to that effect. Immediately upon this alleged statement being made, and following the practice prescribed in the recent case of *Price v. American Agr. Chemical Company*, 178 S. C., 217, 182 S. E., 637, 640, defendant's counsel at once objected to this line of argument, and moved for a mistrial. The affidavits of plaintiff's counsel tend to show that this alleged statement was not made in exactly the phraseology charged, but it is said that the statement was made in the form of a question as to the effect of a verdict against Grainger rather than a direct assertion, and that the language used was, "Would a verdict against Grainger punish him or wipe him out, as they contend?" or, "Would it punish Grainger one cent?" or "Would it punish him one bit?" And it is contended that this line of argument was in direct reply to the argument used by defense counsel.

The trial Judge was in a position where he heard all that occurred, and he overruled the motion. Later, in refusing the motion for a new trial, which was based, among other

things, upon the alleged improper argument, he expressed considerable doubt as to whether plaintiff's counsel had reached a point in his argument where anything said was objectionable. As stated, Mr. Ford was concluding the closing argument in the case. The trial Judge says that full retraction was at once made by Mr. Ford. When he finished his argument, the trial Judge immediately commenced the charge to the jury and admonished the jury at the inception of his charge to disregard anything that might have been said by counsel for the plaintiff or counsel for the defendants touching upon who would have to pay any verdict, if a verdict should be reached in the case. The trial Judge in overruling the motion for a new trial, based upon this ground, stated that he did not feel that the defendant was in any way prejudiced, or that he had failed to obtain a fair and impartial trial.

In *Price v. American Agr. Chemical Co., supra,* many authorities are reviewed, and the rule announced that counsel must object to an improper argument at the time it is made, and it was there said:

"One seeking a new trial because of unfair or improper argument on the part of counsel for the successful party should show these things: (1) That timely objection was interposed to the argument; (2) the substance, at least, of the objectionable language; (3) the failure of the Court to sufficiently warn the jury not to consider the improper argument; and (4) that the result was to materially prejudice the right of the losing litigant to obtain a fair and impartial trial. Many cases in our reports, not necessary to be cited, sustain these propositions."

A careful consideration of the record fails to convince us that the trial Judge committed reversible error. It is true that timely objection was interposed to the alleged impropriety, but we cannot regard this as a flagrant case, or that the defendants, under the circumstances stated here, were

in anywise prejudiced in obtaining a fair and impartial trial.

The appellant complains of error in the cross examination of its witness, Dock Anderson, who was offered as a defense witness to testify as to the condition of the railroad crossing. He was asked this question by plaintiff's counsel: "Did you own this place, or had you moved to Cebu before the time the Court closed up your place for running a nuisance at North Conway?" Objection was immediately made to the form of the question, and the trial Judge promptly ruled it incompetent. Counsel for the respondent thereupon contended that he had the right to ask the question for the purpose of attacking the credibility of the witness. An examination of the record does not disclose that plaintiff's counsel asked the question in bad faith, or for the purpose of getting incompetent evidence before the jury, knowing beforehand that it would be stricken out. When objection was made, the question was withdrawn, and it was stricken from the record. We see no reversible error in this.

Error is also predicated upon questions permitted in the examination of Clemson Proctor, a witness for the plaintiff, bearing upon the habitual failure of the defendant to give the statutory signals at Cebu crossing, which upon one occasion almost resulted in his being caught on the crossing. The gravamen of the charge seems to be that the question was not intended to elicit an answer as to the habitual failure to give statutory signals at this crossing, but to prejudice the defendant's case by showing that another train on another occasion came very near striking the automobile of the witness at this crossing. Upon objection being made, the Court immediately ordered stricken out that portion of the answer with reference to the near-collision, the trial Judge holding that the witness could testify only as to the condition of the crossing and the alleged habitual failure to give the statutory signals.

Later in the examination of this witness, he was asked this question by plaintiff's counsel: "On this occasion you spoke about, how close was the train to you?" to which objection was made. This objection was sustained.

It is urged that the defendant suffered prejudice by reason of plaintiff's counsel persisting in the line of examination indicated, and further because of the colloquy which ensued between plaintiff's counsel and the Court, wherein counsel argued the competency of the evidence.

The plaintiff in this case alleged that within ninety days prior to plaintiff's intestate's death, the defendant company had been guilty of habitual gross negligence in failing to comply with the statutory signals required at this crossing. We see no merit in this exception. The Court promptly ruled the testimony incompetent, and confined the evidence of this witness to the habitual failure of the defendant company in giving the statutory signals, and to the physical condition of the crossing.

Objection was likewise made to examination of the plaintiff's witness, Daniel Barnhill. The witness was asked: "The day you crossed over, did the train approach as you started to cross?" Objection was made to the witness relating the circumstances surrounding his crossing. The objection was promptly sustained. There is no merit in this exception.

Complaint is made that the Court permitted the witness, J. W. Mitchell, to give testimony which was offered in reply, the objection being that the testimony was not properly in reply. This exception is overruled upon the authority of *Goethe v. Browning,* 146 S. C., 7, 143 S. E., 362.

The appellant also complains that the witness A. J. Baker, a civil engineer, who had testified in chief for the plaintiff, was recalled in reply, and the Court erred in permitting him to answer a series of questions concerning the distance traveled by train or automobile in a certain length of time if proceeding at certain rates of speed. During the course of the trial, the defendants made a motion

that the jury be permitted to view the locus, and agreed to operate a train of exactly similar composition to the train involved in the accident, which train would approach the crossing from the same direction and at the same rate of speed as the train involved in the wreck. By consent of counsel for both sides, the jury and the trial Judge visited the scene of the wreck and watched the operation of the train. The testimony of the plaintiff's witness, Baker, concerning the points of different view and the speed of the train and of the automobile, was not gone into until after the defendant's witness, S. D. Cox, a civil engineer, had testified. The testimony of Mr. Baker appears to us to have been in response and in reply to the testimony given by Mr. Cox. The trial Judge in refusing a new trial on this ground stated:

"The plaintiff had not had the opportunity of cross examining the persons operating the train, and the Court felt that it was proper to allow plaintiff this much latitude in replying in this case in these peculiar circumstances. In addition to this, counsel for plaintiff suggested that, if defendants desired, they might have the right to reply to it. If counsel for defendants had requested it, they would have been given that opportunity. Having declined the opportunity to put up further testimony upon this point, and the Court feeling that no prejudice has been done by reason of the testimony, the Court does not feel that a new trial should be granted upon this ground. Even if the testimony was cumulative, it does not appear in any way to have been prejudicial."

We see no reversible error here, and the exception is overruled.

The appellant attempted to elicit from the witness, A. L. Grainger, its section master and codefendant, whether, as a result of the collision, the ignition switch of the automobile had been thrown off, it having been developed from other testimony in the case that immediately preceding the collision Mrs. Anderson had leaned forward as

though to turn off the switch. This witness was asked if there was anything about the nature of the injury to the car that would have affected the switch.

The section master who had charge of the maintenance of the crossing in question was not a mechanic, but testified that he was familiar with the operation of Ford cars. The Court ruled that the witness was not qualified to answer. And in this we think the Court was correct. Furthermore, this witness did not reach the scene of the wreck until about 25 minutes thereafter. In the meantime, the wrecked automobile had been removed from the cowcatcher of the engine, where the impact of the collision had lodged it. Numerous other persons had reached the scene before this witness had.

As in other civil actions, a witness in an automobile accident case, who possesses special skill or knowledge of the subject-matter, may state an opinion, where the facts are such that inexperienced persons are likely to prove incapable of arriving at a correct judgment without the assistance of such opinion. The question as to whether the admission of an opinion of an expert is proper, and whether he is qualified, and the determination of the competency or incompetency of nonexpert evidence, rests largely in the judicial discretion of the trial Judge. *McCown v. Muldrow,* 91 S. C., 523, 74 S. E., 386, Ann. Cas., 1914-A, 139; 5 Am. Jur. Automobiles, § 648. This witness did not testify that he made any examination of the electrical or automatic devices on the switch, nor that he was familiar with the electrical arrangement of the Ford sedan automobile in which the Andersons were riding. He merely stated that he was familiar with operating such a car. We agree with the trial Judge that the testimony did not show him qualified as an expert to give an opinion in such matters.

The appellants have raised several exceptions to the Court's charge to the jury. Error is assigned to this portion of the charge:

"I charge you, gentlemen of the jury, that the failure on the part of the defendant's servants to ring the bell or sound the whistle in the manner provided by statute that would be negligence *per se*. When the defendant violates the requirements of the statute as to the ringing of the bell or sounding of the whistle, and a person is injured by its loco-motive while crossing a highway, street or traveled place, it would presume that such negligence caused the injury, unless it was shown the injuries were caused in some other manner."

It was argued that this is a charge upon the facts, and is not based upon hypothetical statements. Counsel contends that the second clause of this instruction, commencing, "When the defendant," etc., assumes a state of facts, and argues that the sentence should properly have commenced with the word, "if."

In view of the full, clear, and comprehensive charge of the trial Judge, taken as a whole, we are unable to perceive how the jury could reasonably have been misled by this language, as intimating any opinion on the facts. The charge com-plained of concluded with a third sentence, as follows: "I charge you that in connection with what I have already charged you." And, as already stated by us, the charge was full and complete. Furthermore, in our opinion the word "when", as used in the charge, is equivalent to the word "if."

Some of the definitions of the word "when" given by Webster's New International Dictionary, Second Edition, are, "In the event that; on condition that; in virtue of the circumstances that." These definitions clearly carry substan-tially the same meaning as "if."

An instruction to disregard the testimony of a witness "when it is successfully proven that the general reputation of a witness for general moral character is bad," is equivalent to "if it be successfully proven." *State v. Haberle, 72* Iowa, 138, 140, 33 N. W., 461, 462.

The word "when" is generally employed as equivalent to the word "if" in legislative enactments. *Grimball v. Marshall,* 11 Miss. (3 Smedes & M.), 359, 364.

The word "when" is frequently employed as equivalent to the word "if", in legislative enactments and in common speech, too. *Atlantic Coast Line R. Co. v. Jones,* 132 Ga., 189, 63 S. E., 834, 837.

The exception raising this issue is overruled.

At the defendant's request the trial Judge instructed the jury as follows:

" 'The law regards a railroad crossing as a place of danger. The very presence of such a crossing is notice to the person approaching or attempting to cross it, of the danger of colliding with a passing engine or train. And because of the danger there is imposed upon such person the duty of reasonable care and caution, and the reasonable and ordinary use and exercise of his senses of sight and hearing for his own safety and protection; and subject to applicable qualifications and limitations, he is required at least to look and to listen for an approaching engine or train before venturing to cross the track; and if he fails to exercise such ordinary care, he incurs whatever danger he could thereby have discovered and avoided; and if such failure results in injury, he is left without a remedy.' I charge you that with what I have already charged you.

" 'Therefore, if you find from the evidence that the deceased, Mrs. Anderson, failed to look and listen before she entered on the railroad track, and her failure to look and listen was a lack of ordinary care that the law required of her, your verdict must be for the defendants.' "

It is to be noted that the first portion of this charge is a direct quotation from the opinion of this Court in *Robison v. Atlantic Coast Line R. Co., supra.* The second portion of the charge is based upon a hypothetical statement of the facts. The appellant complains that, after giving this charge, the trial Judge added, "I charge you that in connection with

what I have already said, and state further that does not relieve the defendants, however, of complying with the statutory law."

A careful consideration of this charge discloses no reversible error and the exception raising this question is overruled.

The appellant submitted the following request to charge, which was given verbatim by the trial Judge to the jury: " 'If you find that the engineer failed to give the crossing signal, either by blowing the whistle or ringing the bell, that did not excuse the deceased, Mrs. Anderson, from her duty to look and listen for the train before undertaking to cross the tracks of the defendant. If she failed to look and to listen and drove just in front of the train, when it was too late for the engineer to stop and avoid a collision, her failure to look and to listen is such a lack of ordinary care as to amount to gross and willful negligence, and there can be no recovery of damages, if there is a collision.' "

Complaint is made that he followed the giving of this instruction with the following words: "I charge you that in connection with what I have already charged you. But I charge you further that, if Mrs. Anderson failed to stop or look and listen, that would not relieve the defendant railroad company of the statutory requirements to give the signal, as set forth in the statute, nor would it relieve any negligence of the other defendant, if that negligence was the direct and proximate cause of the act."

We see no reversible or prejudicial error in the modification given by the trial Judge, taken in connection with his entire charge to the jury. This exception is overruled.

Finally, the appellant contends that its motion for a directed verdict should have been granted upon the ground that the defendant company was relieved of all acts of negligence relating to the construction, repair, and maintenance of the railroad crossing where the accident occurred, upon the ground that the verdict of the jury

was against the defendant company alone, and not against the defendant, Grainger. It is the contention of the defendant company that the exoneration of Grainger, the section master, under these circumstances, exonerated it. The verdict being against the defendant company alone does not bring about the result contended for.

The testimony tends to show that one J. G. Wilkins was the roadmaster of the defendant; was the superior of Grainger, the section foreman, and had charge of the maintenance of the railroad and its crossings from Myrtle Beach to Elrod, including the Cebu crossing; that Wilkins was over this line for purposes of inspection, often—two or three times a week—that he had direct supervision of the line, and that he gave orders and directions to Grainger to govern him in his duties in connection with the upkeep and maintenance. Under the testimony, the jury could reasonably have found that the negligence of the agents of the defendant company other than Grainger was responsible for the alleged defective condition of the crossing. This principle of law was very clearly stated in the recent case of *Chapman-Storm Lumber Corporation v. Minnesota-South Carolina Land & Timber Company et al.* (S. C.), 190 S. E., 117; filed January 26, 1937. Also see *Beauchamp v. Winnsboro Granite Corp.*, 113 S. C., 522, 101 S. E., 856.

All exceptions are overruled, and the judgment of the lower Court stands affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and BAKER concur.